UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.08-81004-CIV-MARRA

DANIEL S. ROSENBAUM,

Plaintiff,

vs.

BECKER & POLIAKOFF, P.A.,

Defendant.
_____/

BECKER & POLIAKOFF, P.A.,

Counter-Plaintiff

vs.

DANIEL S. ROSENBAUM and
KATZMAN GARFINKEL & ROSENBAUM, LLP,

Counter-Defendants.
_____/

## OPINION AND ORDER

This cause is before the Court upon Plaintiff Daniel S. Rosenbaum's Motion to Dismiss Counts III, IV and V of Defendant's Counterclaim (DE 36); Counter-Defendant Katzman, Garfinkel & Rosenbaum, LLP's Motion to Dismiss Counts II and III of Becker & Poliakoff, P.A.'s Counterclaim, to Decline Subject Matter Jurisdiction of the Counterclaim or to Strike Certain Allegations (DE 48) and Defendant/Counter-Plaintiff Becker & Poliakoff, P.A.'s Motion for Leave to File Two and a Half Page Sur-Reply Brief in Further Opposition to Plaintiff/Counter-Defendant Daniel S. Rosenbaum's Motion to Dismiss (DE 58). The motions

are fully briefed and ripe for review.  The Court has carefully considered the motions and is otherwise fully advised in the premises.

I.  Background

Plaintiff Daniel S. Rosenbaum ("Rosenbaum") has filed a one-count Complaint pursuant to 29 U.S.C. § 1132(A)(1)(b) of the Employee Retirement Income Security Act ("ERISA") for breach of employment and deferred compensation agreement against Defendant Becker & Poliakoff, P.A. ("B&P").  According to the allegations of the Complaint, Rosenbaum entered into an Employment and Deferred Compensation Agreement ("Deferred Compenstation Agreement") with B&P. (Compl. ¶ 5.)  Under the Deferred Compensation Agreement, Rosenbaum agreed to defer a portion of his compensation in order to assist in the growth and development of B&P as a law firm.  (Compl. ¶ 6.)  Under this plan, substantial compensation was withheld from Rosenbaum which was intended to accrue until his termination of service with B&P.  Following the termination, Rosenbaum was entitled to receive ten annual payments of deferred compensation commencing within 30 days of his termination. (Compl. ¶ 8.) Rosenbaum became fully vested under the plan following completion of 25 years of his employment.  (Compl. ¶ 10.)  Rosenbaum terminated his employment on August 4, 2008, one week short of 28 years of service to B&P.  (Compl. ¶ 11.)  Regardless of the manner of termination, all amounts due under the plan are payable.  (Compl. ¶ 12.)  Pursuant to the Agreement, B&P was obligated to pay Rosenbaum his first yearly installment of deferred compensation no later than September 3, 2008. (Compl. ¶ 13.)  B&P failed to make the annual deferred compensation payment to Rosenbaum.  (Compl. ¶ 14.)

In response, B&P filed an Answer, Affirmative Defenses, and Counterclaims against

Rosenbaum and Counter-Defendant Katzman, Garfinkel & Rosenbaum, LLP ("KGR").  The Counterclaim includes five counts: breach of fiduciary duty against Rosenbaum (count one); aiding and abetting a breach of fiduciary duty against KGR (count two); tortious interference with business and/or contractual relations against Rosenbaum and KGR (count three); breach of contract against Rosenbaum (count four) and declaratory relief against Rosenbaum (count five). According to the allegations of the counterclaims, Rosenbaum, a former managing shareholder of B&P, abruptly departed from B&P in August 2008.  In concert with his new law firm, KGR, Rosenbaum deliberately and repeatedly harmed B&P's relationships with its existing clients and employees.   For example, Rosenbaum and KGR prematurely and unilaterally contacted B&P clients to advise them of his departure from the firm and to solicit their business, provided disparaging information to B&P's clients and the general public for the purpose of inducing clients to shift their legal representation to his new law firm, and continued to solicit clients even after they had declined to shift their representation from B&P, removed client files from B&P and took all paper calendars from B&P, resigned from B&P without giving prior notice, solicited virtually the entire group of attorney and support staff from B&P's West Palm Beach office to resign *en masse* from B&P and join KGR without giving prior notice to B&P, had staff members solicit B&P employees to improperly and illicitly download and supply confidential client and proprietary information to the new law firm, filed improper appearances on behalf of B&P clients, and negotiated a sublease of a premises to house its new offices. (Counterclaim ¶ ¶ 7, 18-20, 43, 59.)

The Counterclaims also allege that Rosenbaum signed a shareholders' agreement dated January 1, 1994.  (Counterclaim ¶ 12, Shareholder's Agreement, DE 20-3.)  Paragraph 12 of this

Agreement provided that as a condition of Rosenbaum's employment, he will not for a period of two years from the date of termination interfere with the business of B&P by "seeking, directly or indirectly, any of B&P's clients or inducing, either directly or indirectly, any employee to quit or abandon B&P." (Counterclaim ¶ 12.)  In the event that Rosenbaum were to violate this provision, Rosenbaum would compensate B&P the greater of 50% of any fee received from said client or the Firm's quantum meruit." (Counterclaim ¶ 13.)

According to the counterclaims, the Employment and Deferred Compensation Agreement provides that Rosenbaum "shall turn over to B&P all records in Rosenbaum's possession of any client of B&P" and that such records are the "sole permanent property of B&P." (Counterclaim ¶ 15, Deferred Compensation Agreement, DE 20-4.)  Paragraph sixteen of the Agreement provides that for a period of two years from the date of Rosenbaum's termination that he will not interfere with B&P's business by seeking B&P's clients or inducing employees to quit or abandon B&P. (Counterclaim ¶ 16, Deferred Compensation Agreement, 20-4.)

KGR has moved to dismiss counts two and three of the counterclaim and Rosenbaum has moved to dismiss counts three, four and five of the counterclaim. With respect to the counterclaim for aiding and abetting breach of fiduciary duty, KGR contends that B&P has not adequately alleged that KGR substantially assisted the alleged misconduct of Rosenbaum.  Next, KGR argues that there can be no tortious interference with a business relationship when the relationship at issue is a contract terminable at will.  Finally, KGR requests that the Court decline pendent subject matter jurisdiction over B&P's state law claims over KGR.

Rosenbaum has also moved to dismiss counterclaim three.  In moving to dismiss, Rosenbaum contends that liability for tortious interference requires that the defendant be a

stranger to the business relationship, which means that the defendant cannot have a supervisory interest in how the relationship is conducted or a potential financial interest in how a contract is performed. Rosenbaum asserts that the counterclaim admits that he was a party, not a stranger to all the files and the personnel in the West Palm Beach office. With respect to the breach of contract claim, as it relates to the fifth paragraph of the deferred compensation agreement, Rosenbaum asserts the claim must be dismissed because this paragraph does not address case lists and calendars, nor does it prohibit downloading client information from B&P's computer system. Rosenbaum contends that the twelfth paragraph of the shareholder agreement and sixteenth paragraph of the deferred compensation agreement are void against public policy because they violate Florida Bar Rule 4-5.6 and Ethics Opinion 93-4. Finally, Rosenbaum argues that the declaratory judgment claim should be dismissed under the applicable statute of limitations.

## II. Legal Standard

Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claims" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Fed. R. Civ. P. 8(a). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950.  When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

    III.  Discussion

    A.  Counterclaim Count Two

The counterclaim for aiding and abetting breach of fiduciary duty is lodged against KGR. A claim for aiding and abetting a breach of fiduciary duty requires: (1) a fiduciary duty on the part of the primary wrongdoer; (2) a breach of this fiduciary duty; (3) knowledge of the breach by the alleged aider and abettor; and (4) the aider and abettor's substantial assistance or encouragement of the wrongdoing. See Sensormatic Electronics Corp. v. TAG Co. US, LLC, 632 F. Supp. 2d 1147, 1192 (S.D. Fla. 2008); Court Appointed Receiver of Lancer Offshore, Inc. v. Citco Group, Ltd., No. 05-60080, 2008 WL 926513, at * 5 (S.D. Fla. Mar. 31, 2008); Bruhl v. Price Waterhousecoopers Intern., No. 03-23044-Civ, 2007 WL 983263, at * 10 (S.D. Fla. Mar. 27, 2007); In re Caribbean K Line, Ltd, 288 B.R. 908, 919 (S.D. Fla. 2002); AmeriFirst Bank v. Bomar, 757 F. Supp. 1365, 1380 (S.D. Fla.1991).

    KGR moves to dismiss this counterclaim on the basis that it fails to allege conduct that amounts to substantial assistance on the part of KGR.  KGR contends that there are no

allegations that Rosenbaum's fiduciary duties continued after his resignation as an equity shareholder at B&P on August 4, 2008, thus the only actions of KGR that could constitute aiding and abetting breaches of fiduciary duty are actions that took place prior to that date.  The only action that is alleged to have occurred before that date was a negotiation of a sublease of a premises to house its offices. (Counterclaim ¶ 19.)  KGR contends that all other allegations of misconduct relate to a time period after Rosenbaum had left his employment at B&P.

The Court begins its analysis by noting that KGR does not challenge any other element of this counterclaim besides the substantial assistance or encouragement of the wrongdoing element.  Therefore, the Court will assume for purposes of the present motion that the counterclaim has sufficiently alleged the three remaining elements.  Furthermore, the counterclaim adequately alleges that KGR provided substantial assistance or encouragement prior to Rosenbaum leaving B&P when Rosenbaum did owe a fiduciary duty to B&P.  For example, the counterclaim alleges that KGR entered into an agreement with Rosenbaum to form a new law firm in which he would be the managing partner, and that KGR and Rosenbaum orchestrated mass resignations of all seven of the full time subordinate litigation attorneys and secretarial and paralegal staff who worked in Rosenbaum's department at the B&P's West Palm Beach Office.[1]  (Counterclaim ¶¶ 18-20.)  By orchestrating the *en masse* resignation with no notice, Rosenbaum and KGR sought to strip B&P of its key personnel and leave it ill-equipped to service its existing clients and created an opportunity for Rosenbaum and KGR to poach B&P's clients. (Counterclaim ¶ 43.)  Moreover, KGR made arrangements to enter into a sublease to

---

[1] A fair reading of the allegations of the counterclaim demonstrate that KGR was already in existence at the time when Rosenbaum was still a managing shareholder of B&P, although presumably with a different name. (Counterclaim ¶ 18.)

7

obtain approximately 13,000 square feet of office space in West Palm Beach for the use of such space by Rosenbaum, his subordinate attorneys and support staff after they resigned from B&P and joined the KGR firm. (Counterclaim ¶ 19.)  Based on these allegations, the Court finds that the counterclaim adequately alleges that KGR aided and abetted Rosenbaum's breach of fiduciary duty.

B.  Counterclaim Count Three

Count three of the counterclaim is brought against Rosenbaum and KGR for tortious interference with business and/or contractual relations.  The elements for this claim are: "(1) the existence of a business relationship, not necessarily evidenced by an enforceable contract, under which the plaintiff has legal rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship by the defendant and (4) damage to the plaintiff as a result of the interference." Palm Beach County Health Care Dist. v. Professional Med. Educ., Inc., 13 So. 3d 1090, 1094 (Fla. Dist. Ct. App. 2009); Salit v. Ruden, McClosky, Smith, Schuster, Russell, P.A., 742 So. 2d 381, 385 (Fla. Dist. Ct. App. 1999).  While a cause of action for tortious interference generally does not exist against one who is the party to the relationship allegedly interfered with, Florida courts have also held that this "privilege to interfere[ ] enjoyed by a party [ ] integral to the business relationship is not absolute.  The privilege is divested when the defendant acts solely with ulterior purposes and the advice is not in the principal's best interest." Rudnick v. Sears, Roebuck and Co., 358 F. Supp. 2d 1201, 1206 (S.D. Fla. 2005) quoting O.E. Smith's Sons, Inc. v. George, 545 So. 2d 298, 299 (Fla. Dist. Ct. App. 1989); see also Salit, 742 So. 2d at 386; Scussel v. Baker, 386 So. 2d 1227, 1228-29 (Fla. Dist. Ct. App. 1980).

KGR contends that where the relationships involved are contracts terminable at will, there can be no tortious interference with a business relationship. However, Florida law is clear that an action for tortious interference with a business relationship will lie where a party tortiously interferes with a contract terminable at will. See Tamiami Trial Tours, Inc. v. Cotton, 463 So. 2d 1126, 1127 (Fla. 1985); McCurdy v. Collis, 508 So. 2d 380, 383 (Fla. Dist. Ct. App. 1987); Unistar Corp. v. Child, 415 So. 2d 733, 734 (Fla. Dist. Ct. App .1982); see also Ahern v. Boeing Co., 701 F.2d 142, 144 (11th Cir. 1983) ("The Florida courts have determined that 'an action will lie where a party tortiously interferes with a contract terminable at will'"). The cases relied upon by KGR do not hold to the contrary. Instead, they state that it is only direct and unjustified interference that is actionable. It is only when it can be shown that the interference can be proven to be lawful competition - a privilege which the courts recognize when a contract is terminable at will - that no tortious interference with a business relationship will be found. See Ferris v. South Florida Stadium Corp., 926 So. 2d 399, 401-02, (Fla. Dist. Ct. App. 2006); Greenberg v. Mount Sinai Med. Ctr. of Greater Miami, Inc., 629 So. 2d 252, 255 (Fla. Dist. Ct. App. 1993); Perez v. Rivero, 534 So. 2d 914, 916 (Fla. Dist. Ct. App. 1988); Wackenhut Corp. v. Maimone, 389 So. 2d 656, 658 (Fla. Dist. Ct. App. 1980).

Here, B&P has adequately alleged a claim for tortious interference with a business relationship against KGR and Rosenbaum. B&P alleges that it had and continues to have advantageous business relationships with its many clients and employees about which Defendants knew. In fact, B&P names numerous employees with whom Defendants have interfered. (Counterclaim ¶ 20.) With respect to clients, the counterclaim identifies various clients Defendants allegedly solicited or on whose behalf Defendants allegedly filed misleading

9

appearances in pending litigation matters. (Counterclaim ¶ 30, 41-42 ; Ex. E to Counterclaim, DE 20; Ex. K to Counterclaim, DE 20.)  Furthermore, according to the allegations, Rosenbaum and KGR acted to harm B&P and benefit KGR by soliciting B&P's litigation department to join the KGR law firm, contacting numerous B&P clients to become clients of the KGR law firm, providing disparaging information to B&P clients for the purpose of inducing them to shift their legal representation, filing improper and misleading appearances on behalf of B&P clients in pending litigation matters without obtaining client approval, providing false and disparaging information to B&P employees for the purpose of inducing them to resign their employment with B&P and join the KGR firm, removing client records from the B&P law firm, concealing client records from B&P, deleting calendars containing client information and/or causing or directing subordinate attorneys or staff members to do the same, and directing or causing subordinate attorneys and/or support staff to download confidential client information from B&P's computer system.  (Counterclaim ¶ 59.)  Based on the foregoing, the Court rejects Rosenbaum's contention that the counterclaim has not been pled with particularity.

Finally, the Court also rejects KGR's argument that B&P's tortious interference claim should be dismissed on the basis that its actions constitute privileged competition.  At the motion to dismiss stage, the Court is unable to make this determination.  While justification or privilege to interfere with a contract is a defense to a tortious interference action, it is an affirmative defense.  See Special Purpose Accounts Receivable Co-op Corp. v. Prime One Capital Co., 125 F. Supp. 2d 1093, 1104 (S.D. Fla. 2000) (justification or privilege to interfere with a contract is an affirmative defense to a tortious interference action); Abele v. Sawyer, 750 So. 2d 70, 75 (Fla. Dist. Ct. App. 1999); Melbourne Med. Lab., Inc. v. Lab Corp. of America, 722 So. 2d 962, 964

(Fla. Dist. Ct. App. 1998). Furthermore, the existence of an affirmative defense will generally not support a rule 12(b)(6) motion to dismiss for failure to state a claim. See Fortner v. Thomas, 983 F.2d 1024, 1028 (11th Cir. 1993); Weisfeld v. Peterseil School Corp., 623 So. 2d 515 (Fla. Dist. Ct. App. 1993) (whether the privilege defense exists is a question of fact which must be resolved at trial). The Court is unable to resolve this question at the present time. This ruling is without prejudice to KGR raising this issue as a defense.

    C.  Counterclaim Count Four

The breach of contract counterclaim covers three separate contractual provisions. The Court will discuss each of these provisions in turn.

Rosenbaum seeks to dismiss B&P's counterclaim as it relates to the fifth paragraph of the deferred compensation agreement. This provision concerns Rosenbaum's obligations with respect to client records and provides that they are the "sole permanent property" of the Employer and that Rosenbaum will "turn over to [B&P] all records in [Rosenbaum's] possession of any client of [B&P]." The counterclaim alleges that Rosenbaum breached this provision when he removed client files, downloaded client information from B&P's computer system and caused subordinate attorneys to do the same. It also alleges that Rosenbaum refused to provide B&P management with case lists and calendars maintained by the West Palm Beach litigators following his resignation, despite repeated requests. (Counterclaim ¶¶ 63-64.)

In moving to dismiss, Rosenbaum argues that case lists and calendars do not constitute client records. Furthermore, Rosenbaum contends that nothing in this provision of the deferred compensation agreement precludes anyone from "downloading client information from B&P's computer system." Instead, Rosenbaum argues this provision merely required him to turn over

client records in his possession.  According to Rosenbaum, because this counterclaim does not allege that he has refused to turn over any client records to B&P, it should be dismissed.  The Court will deny Rosenbaum's motion to dismiss this counterclaim with respect to the fifth paragraph of the deferred compensation agreement without prejudice.  Rosenbaum may raise these arguments by way of defense.  These arguments involve contract interpretation which may require parole evidence.  The Court cannot make these determinations as a matter of law on a motion to dismiss.

Next, Rosenbaum seeks to have the sixteenth paragraph of the deferred compensation agreement and the twelfth paragraph of the shareholders' agreement declared void against public policy because they violate Florida Bar Rule 4-5.6[2] and Ethics Opinion 93-4.[3]  Both provisions prohibit Rosenbaum from soliciting B&P's clients or employees for a two-year period following the termination of his employment and mandate that Rosenbaum pay 50% of any fee he receives from those B&P clients which he solicited or from which he accepted employment.  In support, Rosenbaum relies upon <u>Chandris v. Yanakakis</u>, 668 So. 2d 180 (Fla. 1996).  That case held that a contract entered into by an attorney with a client that did not comply with Florida Bar Rules governing contingent fee contracts is against public policy and not enforceable.  <u>Id.</u> at 185-86.

---

[2] Florida Bar Rule 4-5.6(a) states "A lawyer shall not participate in offering or making a partnership, shareholders, operating, employment, or other similar type of agreement that restricts the rights of a lawyer to practice after termination of the relationship, except an agreement concerning benefits upon retirement."

[3] Ethics Opinion 93-4 held that an agreement which gave a law firm the right to 50% of any fees received from a firm client for whom the departing associate continued to perform legal services, or the firm's quantum meruit on such cases, whichever was greater, created a financial disincentive that would operate to preclude the departing associate from accepting representation from firm clients.  As such, the Professional Ethics Committee of The Florida Bar concluded that the agreement violated Florida Bar Rule 4.5-6(a).

In response, B&P point to numerous cases that have held that Florida Bar Rules may not be used as a basis for invalidating provisions in contracts between private parties. See, e.g., Viles & Beckman, P.A. v. LaGarde, No. 2:05-cv-558-FtM-29SPC, 2006 WL 2556941, at * 9 (M.D. Fla. Sept. 1, 2006); State Contracting & Engineering Corp. v. Condotte America, Inc., 97-7014-CV, 2004 WL 5500705, at 23 n.18 (S.D. Fla. Oct. 27, 2004); Miller v. Jacobs & Goodman, P.A., 699 So. 2d 729 (Fla. Dist. Ct. App. 1997); Lee v. Florida Dept. of Ins. & Treasurer, 586 So. 2d 1185, 1188 (Fla. Dist. Ct. App. 1991); Mark J. Kaufman, P.A. v. Davis & Meadows, P.A., 600 So. 2d 1208, 1211 (Fla. Dist. Ct. App. 1992).

The Court observes that a contract is void against public policy when it is "injurious to the interests of the public, or contravenes some established interest of society." Thomas v. Atlantic Coast Line R. Co., 201 F.2d 167, 169 (5th Cir. 1953).[4]  Simply put, the Court is unable to make such a determination on a motion to dismiss. Cf. Eastern Assoc. Coal Corp. v. United Mine Workers of Am., 531 U.S. 57 (2000) (internal quotation marks omitted) (collective bargaining agreement contrary to public policy is unenforceable only if public policy is "explicit, well defined and dominant . . . and ascertained by reference to the laws and legal precedent and not from general considerations of supposed public interests.").  That stated, Rosenbaum may raise as a defense that these provisions of the contract are void as against public policy. Therefore, the motion to dismiss on this basis is denied without prejudice.

---

[4] The decisions of the United States Court of Appeals for the Fifth Circuit, as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit, for this court, the district courts, and the bankruptcy courts in the circuit. Bonner v. Pritchard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

D.  Counterclaim Count Five

Count Five of the Counterclaim seeks a declaratory judgment that the sixteenth paragraph of the deferred compensation agreement and the twelfth paragraph of the shareholders' agreement are valid and enforceable and are not rendered void by Florida Bar Rule 4-5.6(a) or Ethics Opinion 93-4.  This counterclaim also seeks a declaration that neither the Bar Rule nor the Ethics Opinion trumps private contractual provisions or applies retroactively to affect preexisting contractual rights. If so, B&P seeks a ruling that they violate the United States and Florida constitutions.  Rosenbaum moves to dismiss this counterclaim on the basis of statute of limitations.  Specifically, he claims that B&P was required to have filed its declaratory judgment action by 2004, four years after B&P was aware of Ethics Opinion 93-4.[5]  Rosenbaum applies a four-year statute of limitations, contending that since there is no specific statute of limitation governing  a declaratory judgment action the claim is governed by Florida Statute § 95.11(3)(p).

The Court notes that actions for declaratory relief do not have their own statute of limitations.  Luckenbach S.S. Co. v. United States, 312 F.2d 545, 548 (2d Cir. 1963) ("limitations statutes do not apply to declaratory judgments"); Hoagy Wrecker Svc, Inc. v. City of Fort Wayne, 776 F. Supp. 1350, 1359 (N.D. Ind. 1991) ("declaratory relief is a mere procedural device by which various types of substantive claims may be vindicated, and limitations statutes do not apply to declaratory judgments as such.").  Rather, because "declaratory relief is a mere procedural device by which various types of substantive claims may

---

[5] Rosenbaum points to The Florida Bar ex rel Becker & Poliakoff, P.A., 771 So. 2d 1135 (Fla. 2000) as support of B&P's knowledge of Ethics Opinion 93-4.  In that opinion, B&P petitioned the Florida Supreme Court to rescind Ethics Opinion 93-4.  The Florida Supreme Court declined jurisdiction.

be vindicated," it is instead the substance of the right sued upon that governs the applicable limitations period. Luckenback, 312 F.2d at 548 & n.2.  Therefore, the declaratory judgment action must be brought within the limitations period applicable to the substantive claim underlying the request for declaratory relief.

Significantly, with respect to declaratory judgments, a court may only exercise its jurisdiction in the case of an "actual controversy." Malowney v. Federal Collection Deposit Group, 193 F.3d 1342, 1347 (11th Cir. 1999); Chambers v. Cooney, No. 07-0373-WS-B, 2007 WL 2493682, at * 8 (S.D. Ala. Aug. 29, 2007).  In other words, the controversy may not be "conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury." Malowney, 193 F.3d at 1342; Royal Surplus Lines Ins. Co. v. Delta Health Group, Inc., No. 3:03CV419-RS, 2006 WL 167565, at * 8 (N.D. Fla. Jan. 23, 2006).   The Court is unable to determine from the face of the counterclaim whether the statute of limitations has expired as a matter of law.  Rosenbaum may certainly raise the running of the statute of limitations as an affirmative defense, and the Court will address this issue, if need be, at the appropriate stage in the proceedings.

Lastly, the Court rejects Rosenbaum's application to strike the portion of B&P's declaratory judgment claim that the application of Florida Bar Rule 4-5.6(a) and Ethics Opinion 93-4 would violate the contract clause to the United States and Florida Constitution because neither the Rule nor the Opinion existed when Rosenbaum entered into the contract.  According to Rosenbaum, while Florida Bar Rule 4-5.6(a) and Ethics Opinion 93-4 did not exist at that time, the Code of Professional Responsibility did and therefore the Code should govern over the parties' Agreement.  The Court rejects this application as improper under Rule 12(f) which

governs motions to strike. See Fed. R. Civ. P. 12(f) ([t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter). Furthermore, the counterclaim does not challenge the constitutionality of any provision of the Code of Professional Responsibility. Thus, the motion to strike can also be denied on this basis as well.[6]

E.  KGR's Request to Decline Jurisdiction Pursuant to 28 U.S.C. § 1367(c)(1)-(2)

KGR argues that this Court should decline jurisdiction pursuant to 28 U.S.C. § 1367(c)(1)-(2) because counterclaims two and five raise novel and complex issues of state law and the counterclaim will now dominate over the original ERISA claim filed by Rosenbaum.

Section 1367(c)(1) and (2) allow district courts to decline supplemental jurisdiction even if the district court has supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Specifically, section 1367(c)(1) and (2) allows the district court to decline supplemental jurisdiction if the claim "raises a novel or complex issue of State law" or the claim "substantially predominates over the claim or claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c). As evidenced by the Court's citation to several federal court decisions addressing the claim for aiding and abetting the breach of fiduciary duty supra, this claim is frequently litigated in federal court. Therefore, the Court finds that it does not raise a novel or

---

[6] The Court denies B&P's motion for leave to file two and half page sur-reply brief to correct a "gross mischaracterization of Florida Supreme Court precedent in Florida Bar v. St. Louis, 967 So. 2d 108 (Fla. 2007) in Rosenbaum's Reply." (DE 58.)  The Court does not require additional briefing for the sole purpose of understanding legal precedent.  Additionally, the Court does not rely on this case in rendering its opinion.

complex issue of state law. Likewise, with respect to count five, this Court's citation to federal court decisions addressing the use of ethical rules to invalidate private contractual provisions also demonstrates that this issue has been addressed in federal court. See supra Viles; State Contracting. Moreover, the remaining aspect of counterclaim five raises a federal constitutional challenges, which can hardly be considered issues of state law.[7]

      Nor does the Court choose to decline jurisdiction based on the counterclaims substantial predomination over the ERISA claim. To begin, the Court does not find that the counterclaims will predominate. Indeed, there is significant crossover between the Complaint and the counterclaim. After all, the Agreement that Rosenbaum seeks to enforce is the same Agreement that is at issue in counterclaims four and five. Furthermore, counterclaim five presents a federal question. Simply put, the Court finds that factors such as judicial economy, convenience, fairness to the parties and whether all the claims would be expected to be tried together convince the Court to exercise its discretion over the counterclaims. See Palmer, 22 F.3d at 1569.

---

[7] The Court notes that KGR did not provide legal argument in its motion to support its contention that the counterclaims do not arise out of the same transaction or occurrence as the claims in the complaint. KGR did provide legal argument on this point in its reply memorandum. However, raising an argument in a reply memorandum does not provide B&P with an opportunity to address KGR's contentions. As such, the Court will not consider these arguments. See Rule 7.1(C) of the Southern District of Florida ("reply memorandum shall be strictly limited to rebuttal of matters raised in the memorandum in opposition"); Tallahassee Mem. Regional Med. Ctr. v. Bowen, 815 F.2d 1435, 1446 n.16 (11th Cir.1987) ("it is well settled that a party cannot argue an issue in its reply brief that was not preserved in its initial brief") citing United States v. Oakley, 744 F.2d 1553, 1556 (11th Cir.1984). In any event, even if the Court were to address it, the Court would find that the state law claims are "so related" to the federal claim. See Palmer v. Hospital Auth. of Randolph County, 22 F.3d 1559,1563-64 (11th Cir.1994) (standard met when federal and state claims involve same witnesses, presentation of same evidence, determination of same facts).

F.  KGR's Request to Strike the Portion of the Ad Damnum Clause in Counts II and III

B&P does not oppose KGR's application to modify the "wherefore" clause of the counterclaim to make clear that B&P seeks money damages from KGR only with respect to counterclaims two and three.  Thus, B&P shall amend the counterclaim accordingly.

IV.  Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1) Rosenbaum's Motion to Dismiss Counts III, IV and V of Defendant's Counterclaim (DE 36) is **DENIED.**

2) KGR's Motion to Dismiss Counts II and III of Becker & Poliakoff, P.A.'s Counterclaim, to Decline Subject Matter Jurisdiction of the Counterclaim or to Strike Certain Allegations (DE 48) is **DENIED IN PART AND GRANTED IN PART.**

3) B&P's Motion for Leave to File Two and a Half Page Sur-Reply Brief in Further Opposition to Plaintiff/Counter-Defendant Daniel S. Rosenbaum's Motion to Dismiss (DE 58) is **DENIED**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 26th day of January, 2010.

_____
KENNETH A.  MARRA
United States District Judge